# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Bankruptcy Case No. 18-13481 |
| ) | |
| GEORGE BURCIAGA, ) | Chapter 7 |
| ) | |
| Debtor. ) | Honorable Janet S. Baer |
| ) | |
| ) | |
| GEORGE BURCIAGA, ) | Adversary Case No. 18-00212 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ALEX D. MOGLIA, not individually but ) | |
| as chapter 7 trustee for the bankruptcy ) | |
| estate of GEORGE BURCIAGA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

George Burciaga (the "Debtor") filed a two-count adversary complaint in his bankruptcy case against Alex D. Moglia (the "Trustee"), as chapter 7 trustee for the bankruptcy estate, seeking a determination that certain severance pay (the "Severance Pay") is not property of the estate under 11 U.S.C. § 541(a)(1) but, rather, constitutes excluded post-petition earnings under 11 U.S.C. § 541(a)(6).[1] The matter is now before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons set forth below, both motions will be granted in part and denied in part.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

## BACKGROUND

The material facts in this case are few and undisputed. Those facts, gleaned from the relevant pleadings and the exhibits attached thereto, are as follows.

On or about May 1, 2018, the Debtor was laid off from his job at CIVIQ Smartscapes, LLC ("CIVIQ"). (Answer ¶ 8.[2]) Four days later, on or about May 5, 2018, CIVIQ offered the Debtor a separation agreement (the "Separation Agreement").[3] (*See* Compl., Ex. A; Answer ¶ 10.) Consistent with the Debtor's employment agreement,[4] the Separation Agreement offered the Debtor Severance Pay in the amount of $83,333.33, which is the equivalent of four months of his former base salary.[5] (Compl., Exs. A & B; Answer ¶ 10.) In exchange for the Severance Pay, the Debtor was required to, among other things, (1) reaffirm certain covenants in his employment agreement, including a non-compete provision; (2) release any and all claims against CIVIQ; (3) make himself available to CIVIQ to transition his former duties to others; and (4) cooperate with and assist CIVIQ in

---

[2] Unless otherwise noted, all references to the record are to Adv. No. 18-00212.

[3] The documents are inconsistent as to the date on which the Separation Agreement was offered to the Debtor. In his motion for judgment on the pleadings, the Trustee states—and the Debtor does not dispute—that the Agreement was offered on May 5, 2018. (Tr.'s Mot. ¶ 4.) The Separation Agreement, itself, however, is dated May 4, 2018 and includes a notation at the top of page 1 indicating that it was sent via both email and overnight delivery on May 3, 2018. (*See* Compl., Ex. A at 1.) In any event, the parties do not contest that the Agreement was offered to the Debtor prior to the filing of his bankruptcy petition.

[4] The employment agreement relevant to this matter is the one dated January 26, 2016, as modified by the "Second Amendment to Employment Agreement" dated February 28, 2018. (Compl., Ex. B.)

[5] Pursuant to the Separation Agreement, this amount is to be paid to the Debtor in biweekly installments, beginning within two weeks of June 19, 2018, the effective date of the Agreement. (Compl., Ex. A, §§ 2 & 9.)

2

connection with any audits, inspections, inquiries, or legal proceedings. (Compl., Exs. A & B; Answer ¶¶ 11-13.)

On May 8, 2018, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.[6] At that time, the Debtor had neither signed the Separation Agreement nor received any of the Severance Pay. (*See* Tr.'s Mot. ¶ 10; Debtor's Mot. ¶ 9.) About a month later, on June 12, 2018, the Debtor filed an adversary complaint, seeking a determination that the Severance Pay is not property of the bankruptcy estate but, instead, excluded earnings from services performed after the commencement of the case. Thereafter, both the Debtor and the Trustee filed the instant motions for judgment on the pleadings. The motions have been fully briefed and are now ready for ruling.

## JUDGMENT ON THE PLEADINGS STANDARD

The parties' cross-motions for judgment on the pleadings were filed under Rule 12(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b). Under Rule 12(c), judgment on the pleadings may be granted if the movant clearly shows that there are no material issues of fact in dispute and that the movant is entitled to judgment as a matter of law. *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

In ruling on a motion for judgment on the pleadings, a court must view the facts in the light most favorable to the nonmoving party but is not bound by that party's legal characterizations of the facts. *See id.* All uncontested allegations to which the parties have had an opportunity to respond are taken as true. *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982). Although a court generally may not look beyond the pleadings, which consist of the complaint, the

---

[6] The parties assert that the Debtor filed his petition on May 7, 2018 (Answer ¶ 9), but the docket reflects a filing date of May 8, 2018. (*See* Bankr. No. 18-13481, Docket No. 1.)

answer, and any written instruments attached as exhibits, *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452-53 (7th Cir.1998); *see also* Fed. R. Civ. P. 10(c), a court may take judicial notice of matters of public record, *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir. 1991).

As set forth above, there are no material facts in dispute in this matter. Thus, the only question to be considered is whether either party is entitled to judgment as a matter of law.

## DISCUSSION

Pursuant to § 541(a), the filing of a bankruptcy case creates an estate comprised of the debtor's property. 11 U.S.C. § 541(a). Property of the estate is "broad[ly]" defined by the Code, *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204-05 (1983), encompassing "all legal or equitable interests of the debtor in property," 11 U.S.C. § 541(a)(1). Thus, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is [property of the estate] within the reach of § 541." *In re Yonikus,* 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel,* 134 S. Ct. 1188 (2014).

Section 541(a)(6) expands the scope of the definition of "property of the estate" to include not only property interests of the debtor as of the commencement of the case, but also "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541(a)(6); *see also In re Jokiel,* 447 B.R. 868, 871 (Bankr. N.D. Ill. 2011), *In re Taronji,* 174 B.R. 964, 967 (Bankr. N.D. Ill. 1994). "[T]his addition of post[-]petition 'proceeds' to the property of the estate," however, "is subject to an exception for 'earnings from services performed by an individual debtor after the commencement of the case.'" *Taronji,* 174 B.R. at 967 (quoting 11 U.S.C. § 541(a)(6)).

The issue before the Court is whether the Severance Pay is property of the bankruptcy estate

4

under § 541. The Debtor argues that the Severance Pay is not property of the estate because his receipt of that Pay is contingent on his agreement to execute the Separation Agreement and his subsequent compliance with the post-petition conditions outlined therein. According to the Debtor, the Severance Pay is thus a "continuation of income" excluded from the estate under § 541(a)(6). The Trustee disagrees. Relying on *Segal v. Rochelle*, 382 U.S. 375, 380 (1966), he argues that the Severance Pay is "sufficiently rooted in the pre-bankruptcy past" and therefore constitutes property of the estate. The Trustee further contends that the reaffirmation of a non-compete covenant, the release of claims against CIVIQ, and the other terms of the Separation Agreement do not require the Debtor to "perform affirmative acts" and do not, for that reason, constitute services performed by the Debtor after the commencement of the case for purposes of the exception under § 541(a)(6).

### A. The "Sufficiently-Rooted" Test

Over fifty years ago, the United States Supreme Court explained that the "main thrust" of what is now § 541 of the Code "is to secure for creditors everything of value [that the debtor] may possess in alienable or leviable form when he files his petition." *Segal*, 382 U.S. at 379. To that end, the Supreme Court said, "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Id.* The Court recognized, however, that there are limits to what constitutes property of the estate, especially in light of the goal of bankruptcy, which is to "leave the [debtor] free after the date of his petition to accumulate new wealth in the future. Accordingly, future wages of the [debtor] do not constitute 'property' at the time of bankruptcy." *Id.*

Based on these principles, the Supreme Court found that, in determining if an asset is property of the estate, the proper inquiry is whether the asset is "sufficiently rooted in the pre-

5

bankruptcy past and so little entangled with the [debtor's] ability to make an unencumbered fresh start that [the asset] should be regarded as 'property'" under what is now § 541. *Id.* at 380; *see also In re Meyers,* 616 F.3d 626, 628 (7th Cir. 2010) (adopting the "sufficiently-rooted" test in determining how to allocate tax refunds); *Jokiel,* 447 B.R. at 871-73 (applying the "sufficiently-rooted" test). The key question in this matter, then, is whether the Severance Pay is "sufficiently rooted" in the Debtor's pre-petition past or whether it constitutes excluded earnings from post-petition services.

### B. Application of the Test

Based on a review of the pertinent facts, the Court finds that a portion of the Severance Pay is "sufficiently rooted" in the Debtor's pre-bankruptcy past that it constitutes property of the Debtor's bankruptcy estate. Specifically, prior to the filing of his bankruptcy petition, the Debtor was presented with the Separation Agreement under which he was offered the Severance Pay. The offer of Severance Pay is consistent with the various terms of the Debtor's employment agreement, which was executed pre-petition. And, by its very nature, the Severance Pay offer is related to the separation of the Debtor from his employment, that separation also having occurred before the bankruptcy filing. In short, the Debtor has a right to the Severance Pay because that Pay is associated with the pre-petition termination of his pre-petition employment.

Notwithstanding the foregoing, the Severance Pay also bears a number of post-petition characteristics. First, the Debtor did not sign the Separation Agreement under which the Severance Pay was offered until after filing his chapter 7 petition. As a result, any Severance Pay that he receives was and will continue to be paid to him post-petition. Most importantly, various post-petition actions and obligations under the Separation Agreement are conditions to the Debtor's pre-

6

petition right to receive the Severance Pay. Specifically, the Agreement conditions the Debtor's right to receive the Pay on, among other things, the following:

(1) **Cooperating with CIVIQ:**

    (a) assisting CIVIQ with any matters related to the services performed during the Debtor's employment, including transitioning his duties to others;

    (b) cooperating with CIVIQ in the defense or prosecution of any lawsuit, investigation, or third-party claim or action in existence or which may be brought or threatened in the future against or on behalf of CIVIQ by, among other things, (i) meeting with CIVIQ and its legal counsel to prepare for any proceeding, (ii) providing affidavits and/or testimony, (iii) assisting with audits and inspections, and (iv) acting as a witness in connection with any litigation or other legal proceeding affecting CIVIQ; and

    (c) promptly informing the president or HR representative of CIVIQ in writing in the event that the Debtor is contacted by any individual representing any party adverse to the business interests of CIVIQ, including anyone threatening any form of legal action against CIVIQ.

(2) **Returning Property, Affirming Covenants, Refraining from Making Disparaging Statements:**

    (a) returning to CIVIQ all company property, including computer equipment, software, and access codes, as well as company files and documents;

    (b) abiding by all common law and/or statutory obligations related to the protection and non-disclosure of CIVIQ's trade secrets and/or confidential and proprietary documents and information;

    (c) continuing to comply with the confidentiality and non-compete restrictions set forth in the Debtor's pre-petition employment agreement; and

    (d) not making any statements that are professionally or personally disparaging about, or adverse to, the interests of CIVIQ and its officers, directors, and employees.

>    (3) **Releasing Claims:** Agreeing to a broad release of any and all legal claims that the Debtor may have against CIVIQ, including fair employment practices, breach of contract, and age discrimination claims.

(Compl., Ex. A, §§ 3-6.) Only by signing the Separation Agreement, and thereby agreeing to the provisions thereunder, was the Debtor entitled to receive any Severance Pay. If he did not sign the document and agree to the post-petition conditions, the Debtor would receive nothing. Because the Separation Agreement requires the Debtor to perform certain post-petition services, the portion of the Severance Pay related to those services must be excluded from the estate under the post-petition earnings exception of § 541(a)(6).

Relying on *In re Jokiel,* the Trustee contends that the exception is not applicable here because the terms of the Separation Agreement do not require the Debtor to perform any "affirmative acts." Specifically, the Trustee argues, not competing against CIVIQ and releasing potential claims against the company do not constitute "services actually performed" by the Debtor to bring the Severance Pay within the ambit of § 541(a)(6)'s exception.

In *Jokiel*, the debtor was employed pursuant to an employment agreement which included, *inter alia*, a non-compete provision. 447 B.R. at 870. About three months after the debtor filed for chapter 7 bankruptcy protection, his employer executed a merger agreement with another entity, and the debtor was terminated. *Id.* According to the severance provisions in his employment agreement, the debtor was entitled to a lump-sum payment of a certain percentage of his annual base salary if he was terminated without cause, and his unvested or restricted stock options would become fully vested. *Id.* As a condition to receiving severance pay, the debtor was required to sign a general release of any claims against his employer. *Id.* Once terminated, the debtor signed the release in

exchange for the vesting of his unvested stock options and deferred stock, along with a lump-sum payment of $1,215,000, minus withholdings and deductions. *Id.* at 870-71. Noting that the severance provisions were contained in the debtor's pre-petition employment agreement, the chapter 7 trustee claimed that the severance payment constituted property of the bankruptcy estate and filed a motion for turnover. *Id.* at 871. In response, the debtor argued that the merger and termination did not occur until several months after the petition date, that the severance payments thus constituted "earnings from services performed by an individual debtor after the commencement of the case," and that they were therefore excluded from the estate under § 541(a)(6). *Id.*

Applying the Supreme Court's "sufficiently rooted" test, the *Jokiel* court found that "the majority of the severance payment" was "'sufficiently rooted in the pre-bankruptcy past'" that it constituted property of the debtor's bankruptcy estate. *Id.* at 872. According to the court, the right to the severance payment was clearly established as of the petition date by virtue of the pre-petition employment agreement, and the severance payment served "more as an incentive for the [d]ebtor to enter into the employment agreement than as an incentive for him to continue working." *Id.* In addition, the court found that "abstaining from action" as required by the non-compete provision and the execution of a claims release was not the type of "affirmative act[]" that would constitute a "service" under § 541(a)(6). *Id.* at 873 (citing *In re Prince*, 85 F.3d 314, 323 (7th Cir. 1996) (explaining that "courts have interpreted the post[-]commencement earnings exception extremely narrowly, holding that § 541(a)(6) excepts only earnings from services actually performed by an individual debtor after the date of commencement")). The court concluded that "not engaging in certain specified activities cannot be considered a 'service performed.'" *Id.*; *see also Stinnett v. LaPlante (In re Stinnett)*, 465 F.3d 309, 313 (7th Cir. 2006) (finding that "earnings obtained solely

9

by virtue of the inability to perform services cannot be considered the legal equivalent of 'earnings from services performed'").

In reaching that conclusion, the *Jokiel* court contrasted requirements to abstain from action with even minimal affirmative obligations needed for a service to be excepted under § 541(a)(6) by examining *In re Haynes*, 679 F.2d 718 (7th Cir. 1982). In *Haynes*, the Seventh Circuit was faced with the issue of whether a military retiree's retirement pay constituted proceeds for services performed post-petition. *Id.* at 719. In exchange for retiree pay, the debtor was required to perform up to two months of active duty training every four years, if ordered to do so by the Secretary of the Navy, and to report to the Navy for a physical exam at least once every four years. *Id.* The *Haynes* court found that because the debtor had continuing required duties, his military retirement pay was more like wages than a pension, constituted compensation for "reduced current services," and thus was not property of the estate. *Id.*

In this matter, the Debtor, like the one in *Jokiel*, must "abstain[] from action" pursuant to the non-compete and claims release provisions of the Separation Agreement. However, if called upon, the Debtor is also required to perform a great number of affirmative acts, some of which could obligate him for years, in order to receive the Severance Pay. Accordingly, the Court concludes that a portion of the Severance Pay constitutes post-petition services under the exception to § 541(a)(6).

### C. Allocation of the Severance Pay

Having found that the Severance Pay is both pre-petition property of the bankruptcy estate and post-petition earnings for services excluded therefrom, the Court must determine how to allocate that Pay between the estate and the Debtor. When "proceeds" arise both from post-petition services performed by an individual debtor and from other estate assets, "[t]he application of the post[-

10

]petition earnings exception requires a proportional division." *Taronji*, 174 B.R. at 970; *see also Jokiel*, 447 B.R. at 874 (explaining that "where some post-petition service is a condition to a pre-petition right, the interest should be divided between the estate and the debtor *pro rata* based on the ratio between the time the debtor worked under the employment agreement before the petition date and the time worked after the petition date").

As discussed above, the Debtor has a right to the Severance Pay based on his pre-petition employment and termination. However, the Separation Agreement, executed after the bankruptcy filing, requires the Debtor to perform various affirmative acts post-petition, including transitioning his duties to others at CIVIQ and meeting with CIVIQ and its legal counsel to prepare for the defense or prosecution of litigation or other legal action, now or in the future. While the Debtor may never be called upon to perform these and other services, it is also possible that CIVIQ will reach out to him and that he will be obligated for years to come.

Given the hybrid nature of the Severance Pay and the fact that the Debtor's post-petition obligations could last for years, the Court determines that a fair allocation of the Severance Pay between the bankruptcy estate and the Debtor is 50/50. As a result, the Debtor's motion for judgment on the pleadings will be granted in part, with 50% of the Severance Pay being deemed post-petition earnings excluded from the estate under § 541(a)(6), and the Trustee's motion for judgment on the pleadings will be granted in part, with 50% of the Severance Pay being deemed property of the estate under § 541(a)(1).

## CONCLUSION

For the foregoing reasons, the Court finds that half of the Severance Pay is property of the Debtor's bankruptcy estate and half constitutes earnings excluded therefrom. Accordingly, both of

the parties' motions for judgment on the pleadings will be granted in part and denied in part. A separate order will be entered consistent with this Memorandum Opinion.

Dated: **March 22, 2019**  ENTERED:

Janet S. Baer
United States Bankruptcy Judge